# United States Court of Appeals for the Federal Circuit

---

**PROMEGA CORPORATION,**
*Plaintiff-Cross-Appellant*

**MAX-PLANCK-GESELLSCHAFT ZUR FOERDERUNG DER WISSENSCHAFTEN E.V.,**
*Plaintiff*

**v.**

**LIFE TECHNOLOGIES CORPORATION, INVITROGEN IP HOLDINGS, INC., APPLIED BIOSYSTEMS, LLC,**
*Defendants-Appellants*

---

2013-1011, 2013-1029, 2013-1376

---

Appeals from the United States District Court for the Western District of Wisconsin in No. 10-CV-0281, Judge Barbara B. Crabb.

---

Decided: November 13, 2017

---

SETH P. WAXMAN, Wilmer Cutler Pickering Hale and Dorr, LLP, Washington, DC, for plaintiff-cross-appellant. Also represented by KEVIN LAMB, THOMAS SAUNDERS; MARK CHRISTOPHER FLEMING, ERIC FLETCHER, JANINE MARIE LOPEZ, Boston, MA; PROSHANTO MUKHERJI, Fish &

Richardson, PC, Boston, MA; SUSAN REBECCA PODOLSKY, Law Offices of Susan R. Podolsky, Alexandria, VA.

EDWARD R. REINES, Weil, Gotshal & Manges LLP, Redwood Shores, CA, for defendants-appellants. Also represented by MARION MCLANE READ, DEREK C. WALTER; CARTER GLASGOW PHILLIPS, Sidley Austin LLP, Washington, DC.

DARYL JOSEFFER, King & Spalding LLP, Washington, DC, for amicus curiae The Internet Association. Also represented by PAUL ALESSIO MEZZINA; ADAM M. CONRAD, North Carolina Business Court, Charlotte, NC.

PETER J. BRANN, Brann & Isaacson, Lewiston, ME, for amici curiae Newegg, Inc., Acushnet Company, Limelight Networks, Inc., QVC, Inc., SAS Institute, Inc. Also represented by STACY O. STITHAM, DAVID SWETNAM-BURLAND.

———————

Before PROST, MAYER, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

This case returns to us on remand from the Supreme Court. *See Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 741 (2017) (*Promega II*). Defendants-Appellants (collectively, Life) sought review of our decision in *Promega Corp. v. Life Technologies Corp.*, 773 F.3d 1338 (Fed. Cir. 2014) (*Promega I*), arguing, *inter alia*, that we erred in holding that a multicomponent product assembled overseas could infringe a United States patent under 35 U.S.C. § 271(f)(1)[1] when only a single component of the

———————

[1]    Section 271(f)(1) states:

Whoever without authority supplies or causes to be supplied in or from the United States all or a

product is supplied from the United States. The Supreme Court granted Life's petition for a writ of certiorari, reversed our judgment, and remanded for further proceedings consistent with its holding that "§ 271(f)(1) does not cover the supply of a single component of a multicomponent invention." *Promega II*, 137 S. Ct. at 743.

The Supreme Court's opinion did not affect several of our prior holdings. First, we held that the asserted claims of four patents owned by Promega Corporation (Promega) were invalid for failure to comply with the enablement requirement in 35 U.S.C. § 112, ¶ 1. *Promega I*, 773 F.3d at 1346–50. Second, we held that certain of Life's alleged acts of infringement were not licensed under a 2006 license agreement between Life and Promega.[2] *Id.* at 1357–58. Finally, we held that Life was not required to "actively induce" a third party to combine the components of the accused products to be liable under § 271(f)(1). *Id.* at 1351–53. Rather, the active inducement requirement could be met if Life had the specific intent to combine the components itself. *Id.* We reaffirm our holdings on the enablement, licensing, and active inducement issues.

---

substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

[2] The 2006 license agreement was originally between Promega and Applied Biosystems, LLC, which is now a wholly-owned subsidiary of Life. *See Promega I*, 773 F.3d at 1344 & n.3.

The Supreme Court's opinion, however, requires us to reconsider two of our prior holdings. First, we must reexamine our reversal of the district court's grant of Life's motion for judgment as a matter of law (JMOL) that Promega failed to prove its infringement case under 35 U.S.C. § 271(a)[3] and § 271(f)(1).[4] *See id.* at 1358. Second, we must reconsider our vacatur of the district court's denial of Promega's motion for a new trial on damages and infringement. *Id.* For the reasons below, we now *affirm* the district court's decisions on these motions.

BACKGROUND

In our prior opinion, we described the asserted patents, accused products, and procedural history before the district court. *See id.* at 1341–45. We recite below only the facts relevant to our analyses of the district court's rulings on Life's JMOL motion and Promega's motion for a new trial.

I. Factual Background

From 2006 through 2012, Life sold genetic testing kits designed to detect the presence of "short tandem repeats" (STR), which are repeating sequences of DNA that are analyzed when profiling an individual's DNA. *Id.* at 1341–42, 1344. Life's kits, referred to as "STR kits," were

---

[3]    Section 271(a) states:

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

[4]    Sections 271(f)(1) and 271(a) were the only infringement theories pursued by Promega at trial, since it abandoned other theories it had pled. *See* J.A. 2296.

assembled in the United Kingdom. *Id.* at 1350. Each of the kits was comprised of five components. At least one of the five components in each kit—*Taq* polymerase—was supplied from the United States. *Id.* at 1344.

Promega was the exclusive licensee of United States Reissue Patent No. 37,984 (Tautz patent), which expired in 2015. The Tautz patent claimed methods and kits for analyzing DNA to determine the identity and kinship of organisms. *See, e.g.*, Tautz patent, J.A. 406, col. 11 l. 51–col. 12 l. 64; J.A. 407, col. 13 ll. 28–47.

## II. Proceedings in District Court

### A. Pretrial Proceedings

Promega sued Life for infringement of the Tautz patent by Life's STR kits, seeking damages for infringement occurring between 2006 and 2012.

At summary judgment, Promega moved for a ruling that Life's accused products meet all of the elements of the asserted claims of the Tautz patent. *See generally* J.A. 688–703. Life did not challenge this assertion. Therefore, the district court granted Promega's motion. Promega did not request a ruling on Life's liability under any particular subsection of § 271 or any ruling quantifying Life's infringing acts. Therefore, the district court's summary judgment ruling did not resolve the ultimate issue of Life's liability for infringement—that is, the district court did not decide how many of Life's kits, all assembled abroad, were sold, offered for sale, or imported into the United States (§ 271(a)) or included a substantial portion of their respective components that were supplied from the United States (§ 271(f)(1)).[5] The district court

---

[5] Promega's brief in support of its motion for summary judgment cited evidence of infringing sales in the United States but did not quantify such sales.

explained, in a later opinion resolving the parties' various motions *in limine*, that, at summary judgment, it "did not enter judgment in favor of plaintiff on liability generally." J.A. 36.

## B. Trial

The case proceeded to a jury trial. On the first day of trial, the parties stipulated that Life's total worldwide sales of the accused products during the pertinent time period amounted to $707,618,247. J.A. 189. Later, during Life's case-in-chief, a dispute arose as to the effect of the parties' stipulation. During Life's direct examination of Mr. Guido Sandulli, one of Life's employees, counsel for Life asked Mr. Sandulli to quantify the amount of United States sales of Life's accused products since 2006. J.A. 6126. Promega objected to the question on the basis that the amount of United States sales was irrelevant to any issue in dispute at trial. The district court overruled the objection. Promega then requested a sidebar at which it argued that "[t]he whole purpose of [the stipulation] was to remove from this case the need for the plaintiff to go into [a] series of witnesses to prove up sales of infringing kits." J.A. 6127. Life countered that there was still a live issue as to whether Promega was entitled to "damages on worldwide sales or simply on U.S. sales." J.A. 6130. Promega responded that prior statements by Life had created the impression that Promega was not required to prove anything at trial regarding the amount of domestic versus foreign sales, in view of the stipulation.

The district court expressed its own confusion regarding whether the parties had agreed that Promega did not need to separately quantify domestic and foreign sales. This confusion arose from prior statements by Life indicating that the only disputed issues for trial related to licensing, damages, and willfulness. For example, when Promega attempted to introduce sales evidence during its case-in-chief, Life objected, stating that the evidence was

irrelevant to any issue at trial and that "[t]he reason for [the] stipulation was so the plaintiffs would not need to use underlying sales data to prove some overall sales number." J.A. 5571–73. After acknowledging that neither party had gotten to the "nub of the problem" until the above-described dispute arose, the district court indicated to the parties that Promega still needed to prove the amount of damages attributable to infringement under § 271(a) and the amount of damages attributable to infringement under § 271(f)(1). J.A. 6190; *see also id.* ("[P]laintiff thought that it didn't have to put in any more than it already had, and that's not correct."). In other words, the fact that Life's accused kits met all the limitations of the asserted claims did not automatically mean that Promega had proven it was entitled to a damages amount based on Life's total worldwide sales. But in view of Life's statements, which Promega apparently understood as conceding the issue of liability entirely, and in view of the district court's "miscommunication" on this issue, the district court proposed that Promega be given a second chance to meet its burden by presenting evidence of infringing sales in its rebuttal case. *Id.* The parties agreed to this proposal.

In its rebuttal case, Promega presented additional evidence of infringement. For example, Promega submitted financial spreadsheets generated by Life showing sales of the accused products to certain law enforcement agencies in the United States. Promega elicited testimony from Mr. Sandulli indicating that, although all of the accused kits were assembled in the United Kingdom, the *Taq* polymerase component used in all of the accused kits originated from the United States. In addition, Promega introduced evidence that three of the accused products—the "Identifiler" kits—included primer components that were supplied from the United States. However, Promega did not proffer evidence or elicit testimony intended to prove a specific amount of domestic, foreign,

or any other subset of total sales.  Instead, Promega relied only on the stipulated worldwide sales figure as a potential damages base.  *See, e.g.*, J.A. 6416–19 (counsel for Promega identifying, at closing argument, only Life's total worldwide sales as a potential damages base).

Promega continued to rely solely on the worldwide sales figure when it submitted a proposed special verdict form to the district court that asked the jury to determine a single amount for sales falling under either, or both, of § 271(a) and § 271(f)(1).  Life objected to Promega's proposal because, *inter alia*, "it [did] not make clear that Promega [bore] the burden of proof of establishing the quantum of kits that were made, used, sold in the United States, or imported into the United States."  J.A. 2441.  The district court adopted Promega's proposal, over Life's objection, and incorporated it into Question No. 2 of the special verdict form: "What is the total dollar amount of defendants' sales of STR kits that were United States sales as that term has been defined for you in the instructions?"  J.A. 202.  In turn, the jury instructions used Promega's proposed definition of "United States sales" to include "all kits made, used, offered for sale, sold within the United States or imported into the United States, as well as kits made outside the United States where a substantial portion of the components are supplied from the United States."  J.A. 189.  Promega, in effect, sought to prevent the jury from calculating separate damages numbers under § 271(a) and § 271(f)(1), proposing instead that the jury calculate a single damages amount.  This strategy succeeded when the district court adopted Promega's proposed Question No. 2 in the special verdict form and Promega's definition of "United States sales."

The jury found that all of Life's $708 million in worldwide sales qualified as "United States sales," and also found that a substantial portion of these sales, approximately $637 million, were for permitted uses under the 2006 license agreement.  J.A. 202.  The jury found

that all of Life's unlicensed sales infringed Promega's five asserted patents under § 271(a) and/or § 271(f)(1) and awarded Promega $52 million in lost profits damages. The district court entered judgment on the verdict.

## C. Post-Trial Proceedings

### 1. Life's JMOL Motion

Life filed a renewed motion for JMOL pursuant to Federal Rule of Civil Procedure 50(b), arguing that Promega "failed to prove the applicable damages for patent infringement" and was therefore entitled to no damages. J.A. 2296.[6] Life contended that Promega was not entitled to any damages award because, *inter alia*, (1) the damages verdict could not stand because it was premised on a misinterpretation of § 271(f)(1), and (2) Promega had failed to present adequate evidence of an amount of infringing sales under either § 271(a) or § 271(f)(1). Life's briefing in support of the motion emphasized Promega's failure to quantify and categorize the accused acts of infringement. *See* Life Open. JMOL Br., No. 10-CV-281 (W.D. Wis. Mar. 22, 2012), ECF No. 581 at 11 ("[W]ith only an aggregate sales number for all kits combined, the jury had no evidence upon which it could partition that sales number up among any smaller collection of kits to award damages for any infringement proven for any such lesser group of kits."). Promega's response focused on preserving the entirety of the damages verdict, arguing, *inter alia*, (1) that all of the accused products infringed under § 271(f)(1) because all of the products included the *Taq* polymerase component, which qualified as a "substantial portion" of each of the accused products'

---

[6]    There is no dispute that Life timely moved under Rule 50(a) at trial for the same relief under the same basic reasoning raised in its Rule 50(b) motion. *See* Trial Transcript, J.A. 2150–51.

components, and (2) that all of the accused products infringed under § 271(a). Importantly, Promega did not dispute Life's separate argument that Promega presented insufficient evidence to support a lesser damages award.

The district court granted Life's JMOL motion, holding that no reasonable jury could have found, based on the trial record, that all of the accused products infringed under § 271(a) or § 271(f)(1), in light of the district court's interpretation of "substantial portion." It further found that Promega had waived any argument that the trial record could support a damages calculation based on an amount other than worldwide sales by failing to contest Life's argument in its opening JMOL brief that the record contained no evidence that a jury could use to perform such a calculation. Therefore, in order to defeat Life's JMOL motion, trial evidence and all reasonable inferences drawn in Promega's favor had to support a finding that *all* of the accused products infringed.

Regarding infringement under § 271(f)(1), the district court held as a matter of law that a single component could not qualify as a "substantial portion" of the components of the accused products under the district court's reading of the statute. The district court then concluded that Promega's evidence was insufficient to support a finding that all of the accused kits assembled in the United Kingdom contained two or more components originating from the United States. Therefore, the district court held that no reasonable jury could have found that all of the accused products infringed under § 271(f)(1).

The district court further held that no reasonable jury could have found infringement under § 271(a) for all of the accused products that did not infringe under § 271(f)(1). The district court determined, moreover, that Promega's cited evidence on § 271(a) infringement— consisting of deposition testimony from a single Life

employee—could not support a finding that all of the accused products were sold or imported into the United States, even when all reasonable inferences were drawn in Promega's favor from such testimony. Because Promega had waived any argument that the evidence at trial could support a damages calculation based on any subset of total sales, and because no reasonable jury could have found that all of the accused products infringed under § 271(a) and/or § 271(f)(1), the district court granted Life's JMOL motion.

## 2. Promega's Motion for a New Trial

After the district court issued its JMOL decision, Promega obtained new counsel and moved for reconsideration or a new trial, arguing for the first time that the evidence could support a damages award based on a subset of worldwide sales. The district court denied Promega's motion. The district court reiterated that Promega had waived any argument based on a subset of worldwide sales by failing to respond to Life's argument on this issue in its JMOL briefing:

> In response to defendants' [JMOL] motion, plaintiff argued that the motion should be denied because the evidence was sufficient to support the jury's finding that *all* of defendants' sales of the accused products violated § 271(f)(1) or § 271(a). Plaintiff did *not* argue in the alternative that defendants' Rule 50 motion should be denied because the trial record was sufficient to support a lesser damages award and it did not respond in any way to defendants' contention that plaintiff's evidence at trial was limited to defendants' total worldwide sales. As a result, I concluded that plaintiff had conceded this issue.

J.A. 2365–66.

Promega appealed the district court's rulings on Life's JMOL motion and Promega's motion for a new trial.

### III. *Promega I*

We reversed the district court's decisions on both motions. *See Promega I*, 773 F.3d at 1341. Regarding § 271(f)(1), we held that a single component supplied from the United States could qualify as a "substantial portion" of a multicomponent product, depending on the circumstances in a given case. *Id.* at 1356. We then held that, in this case, substantial evidence supported the jury's finding that Life was liable for infringement under § 271(f)(1), because a reasonable jury could conclude that the *Taq* polymerase component supplied from the United States qualified as a "substantial portion" of the components of each of the accused products. *Id.* We also held that, based on Life's "own admissions, which are supported by evidence in the record," some unquantified number of Life's kits that were "made, used, or sold in the United States" infringed the Tautz patent under § 271(a). *Id.* at 1357.[7] Finally, we vacated the district court's denial of Promega's motion for a new trial and remanded with instructions to conduct a new damages trial in light of our holding that the asserted claims of four of Promega's patents found to have been infringed were invalid for lack of enablement. *Id.* at 1358.

---

[7] It is undisputed that Life admitted to at least some infringement. *See, e.g.*, J.A. 5127 (Life admitting at trial that there had been "an infringement" and that Promega was "entitled to be compensated for that infringement").

## IV. *Promega II*

The Supreme Court reversed our judgment and remanded for further proceedings consistent with the Court's opinion that "a single component does not constitute a substantial portion of the components that can give rise to liability under § 271(f)(1)." *Promega II*, 137 S. Ct. at 737. This holding nullified our conclusion in *Promega I* that all of the accused products Life made in the United Kingdom infringed under § 271(f)(1).

## V. Post-Remand Submissions by the Parties

The parties submitted statements on how we should proceed post-remand. *See* Case No. 13-1011 ECF No. 108 (Life's Statement), ECF No. 112 (Promega's Statement). Life argues that we should affirm the district court's post-trial decisions, contending that "[t]he trial judge with her 'first-hand knowledge of witnesses, testimony, and issues' simply held Promega to its own considered strategic litigation decisions, and appropriately denied Promega's retrial request." Life's Statement at 3 (quoting *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 n.3 (2006) (internal quotes and citations omitted)). Promega counters that we should reaffirm our prior holdings, reinstating the judgment of infringement under § 271(a) and ordering a new trial on damages, because "[t]he Seventh Amendment, the Patent Act, and precedent all require a new trial on damages under § 271(a)—not a windfall judgment of noninfringement," given Life's admissions that it committed infringing acts in the United States. Promega's Statement at 2, 9.

## STANDARDS OF REVIEW

We review a district court's rulings on post-trial motions for JMOL and a new trial under regional circuit law. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). In the Seventh Circuit, a JMOL grant is reviewed "without deference, while viewing all

the evidence in the light most favorable to the nonmoving party." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1357 (Fed. Cir. 2010) (citing *Harper v. Albert*, 400 F.3d 1052, 1061 (7th Cir. 2005)). JMOL is proper when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a).

"The ruling on a motion for a new trial is a matter committed to the district court's discretion," which the Seventh Circuit reviews "for abuse of discretion." *Galvan v. Norberg*, 678 F.3d 581, 588 (7th Cir. 2012). In the Seventh Circuit, appellate review of a decision denying a new trial is "extremely deferential." *Id.*

## DISCUSSION

Under 35 U.S.C. § 284,[8] a finding of infringement "establishes the fact of damage because the patentee's right to exclude has been violated." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty" when infringement is found. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003). However, in this case Promega expressly waived its right to any award based on a reasonable royalty. *See, e.g.*, Trial Transcript, J.A. 6482 (Counsel for Promega: "Royalties? Don't want them.

---

[8]    Section 284 states, in pertinent part:

   Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

Wouldn't have taken them. Don't expect them."). Promega only sought damages in the form of lost profits. *See id.* Accordingly, we confine our decision to a consideration of whether Promega is entitled to some award of its lost profits as "damages adequate to compensate for the infringement" under the facts of this case. 35 U.S.C. § 284.

I. Promega's Burden to Prove the Amount of Damages

In patent cases, "[t]he burden of proving damages falls on the patentee," *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), and "[t]he [patentee] must show his damages by evidence," *Philp v. Nock*, 84 U.S. 460, 462 (1873). Damages "must not be left to conjecture by the jury. They must be proved, and not guessed at." *Id.*

When a patentee seeks lost profits as the measure of damages, "the patent holder bears the burden of proving the **amount** of the award." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996) (emphasis added). "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). "[T]he amount is normally provable by the facts in evidence or as a factual inference from the evidence." *Lindemann*, 895 F.2d at 1406.

II. Promega's Waiver of Alternative Damages Arguments

The linchpin of the district court's rulings on Life's JMOL motion and Promega's motion for a new trial is its finding that Promega waived any argument that the trial record supports a damages calculation based on a subset of Life's total worldwide sales. In *Promega I*, we held that all of the accused products infringed under § 271(f)(1) and that the jury's damages verdict—based on total sales—was supported by substantial evidence. 773 F.3d at 1358.

It was therefore unnecessary for us to address the district court's waiver finding. However, now that it is undisputed that certain of the accused kits did not infringe under the Supreme Court's interpretation of § 271(f)(1)—specifically, kits containing only one component supplied from the United States that were assembled and sold overseas to foreign buyers without ever passing through the United States—we must address the district court's waiver finding.[9]

We review the district court's waiver finding using the same standard applied by the regional circuit. *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003). The Seventh Circuit reviews the ultimate legal conclusion of waiver *de novo* and predicate factual findings for clear error. *Baker v. Lindgren*, 856 F.3d 498, 506 (7th Cir. 2017).

Under Seventh Circuit precedent, a party may waive an argument by not raising it in opposition to a Rule 50(b) motion. *See Wallace v. McGlothan*, 606 F.3d 410, 418–19 (7th Cir. 2010) (holding that party waived an argument by failing to raise it in opposition to Rule 50(b) motion). In its opening JMOL brief, Life argued that, "with only an aggregate sales number for all kits combined, the jury had no evidence upon which it could partition that sales number up among any smaller collection of kits to award damages for any infringement proven for any such lesser

---

[9]    Promega argues that the accused Identifiler kits contained multiple components supplied from the United States. *See* Promega's Statement at 2. However, in its post-remand submission Promega does not argue that any of the other fourteen accused products contained two or more components supplied from the United States. Nor does Promega maintain in its post-remand submission that all of Life's accused kits infringe under § 271(a) or § 271(f)(1).

group of kits." Life Open. JMOL Br., No. 10-CV-281 (W.D. Wis. Mar. 22, 2012), ECF No. 581 at 11. The district court rephrased Life's argument as claiming that Promega "adduced evidence only as to defendants' *total* worldwide sales" and, therefore, that "defendants are entitled to judgment as a matter of law unless all of those sales fall under § 271(a) or § 271(f)(1)." J.A. 2340–41. The district court then found that Promega did not dispute this argument in its responsive JMOL brief and, therefore, that Promega had "conceded" the point.[10] *See id.*

Having reviewed Promega's responsive JMOL brief, we agree with the district court that Promega waived any argument that the trial record could support a damages award based on a subset of total sales by wholly failing to address Life's argument on this point.

Promega's position at JMOL was completely consistent with Promega's all-or-nothing damages strategy that Promega pursued throughout the litigation. At trial, the district court corrected Promega's misconceptions about the import of the parties' stipulation regarding the amount of Life's total worldwide sales and informed Promega that it needed to put forward evidence separately proving the amount of infringing acts under § 271(a)

---

[10] In its JMOL opposition brief, Promega argued that: (1) Life's JMOL motion raised untimely arguments that were not raised in Life's Rule 50(a) motion; (2) Life's reading of § 271(f)(1) was improperly narrow; (3) even under Life's reading of § 271(f)(1), the evidence supported a jury's finding that *all* of the accused products infringed under § 271(f)(1); and (4) the evidence supported a jury's finding that *all* of the accused products infringed under § 271(a). Promega does not press the first, third, and fourth arguments in its post-remand statement. The Supreme Court rejected Promega's second argument.

and § 271(f)(1). Promega did not object to the district court's characterization of its burden of proof on infringement, nor did it move the district court for a continuance of the trial in order to reopen discovery and develop the evidence necessary to quantify domestic and foreign sales. Rather, Promega elected to make what appears to be a cursory attempt at further proving the ***fact*** of damages during its rebuttal case (by showing that some sales were made to United States customers)—as opposed to any particular ***amount*** of damages. *Lindemann*, 895 F.2d at 1406 ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated. . . . The patentee must then prove the amount of damage.").

Promega presented no expert testimony on damages at trial. Instead, in its rebuttal case, Promega relied on exhibits and lay testimony, including testimony from Mr. Sandulli regarding financial spreadsheets showing sales of the accused products, without using any of this evidence to arrive at any numerical value that could have been used by a reasonable jury to calculate an award of lost profits damages. We agree with Life that Promega did not "produce a witness who could make sense of the documents" it presented in such a way that could have enabled a reasonable jury to calculate a damages award. Life Reply Br. at 50.

Promega later confirmed its adherence to its all-or-nothing approach by submitting a proposed special verdict form that asked the jury to determine a single "United States sales" figure for sales falling under both § 271(a) and § 271(f)(1). Promega knew that it needed to prove the ultimate issue of liability under § 271, as evidenced by its attempts to put in evidence and elicit testimony regarding sales in the United States and components supplied from the United States. These efforts clearly indicate Promega's recognition of its burden to separately prove infringement under § 271(a) and § 271(f)(1), respectively.

Yet it exclusively argued liability for all, rather than any subset(s), of the accused kits.[11]

Promega's deliberate strategy to adhere to a single damages theory had the effect of winnowing out from the case any argument about damages based on a figure other than worldwide sales. *Cf. Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1347 (Fed. Cir. 2001) (affirming the district court's refusal to consider a new damages theory presented for the first time post-remand, because the plaintiff "made strategic decisions in the initial trial concerning what evidence and arguments to advance in support of his theory of damages"). The Supreme Court has explained that "waiver and forfeiture rules" exist to "ensure that parties can determine when an issue is out of the case, and that litigation remains, to the extent possible, an orderly progression." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.6 (2008).

---

[11] Promega cites statements by the district court that, according to Promega, indicate that the district court determined at summary judgment that Life was liable for infringement by all of its accused kits. Promega Open. Br. at 4 (citing J.A. 2287, 6310). This assertion is belied by the district court's indication at trial that the ultimate issue of Life's liability was unresolved, because Promega needed to prove the amount of damages attributable to infringement under § 271(a) and the amount of damages attributable to infringement under § 271(f)(1). J.A. 6190. Moreover, after the Supreme Court's decision, it is now indisputable that Life is not liable for infringement by all of the accused products, given that kits containing only one component supplied from the United States that were assembled and sold overseas to foreign buyers without ever passing through the United States cannot infringe under § 271(a) or § 271(f)(1).

> The reason for the rules is not that litigation is a game, like golf, with arbitrary rules to test the skill of the players.  Rather, litigation is a "winnowing process," and the procedures for preserving or waiving issues are part of the machinery by which courts narrow what remains to be decided.

*Id.* (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir. 1993)).  In the instant case, the district court could properly conclude that Promega abandoned any alternative damages base when it failed to rebut Life's argument in its Rule 50(b) motion that Promega did not present evidence that a reasonable jury could have relied on to award damages based on any subset of total worldwide sales.  The district court's decision was all the more reasonable given that it warned Promega during trial that it bore the burden to separately prove infringement under § 271(a) and § 271(f)(1).  As in *Exxon*, the district court's waiver finding was part of its "sensible efforts to impose order upon the issues in play and the progress of the trial."  554 U.S. at 487 n.6.  Such a finding "deserve[s] our respect."  *Id.*

## III. Life's JMOL Motion

Promega argues, and Life does not dispute, that the record contains evidence of admitted infringement by Life under § 271(a).  It further argues that we should reaffirm our prior decision on § 271(a) infringement and order a new trial on damages.  Promega's Statement at 9.  In *Promega I*, we held that an unspecified number of Life's accused products infringed the Tautz patent under § 271(a).  773 F.3d at 1356–57.  We made no finding regarding the quantity of infringing acts under § 271(a), because such a finding was unnecessary in light of our holding that all of the accused products infringed under § 271(f)(1).  Now that our holding under § 271(f)(1) has been reversed by the Supreme Court, and in view of the waiver finding discussed, *supra*, the only way Promega

could preserve the jury's damages verdict is by showing that the record supports a finding that all of Life's accused products that did not infringe under § 271(f)(1) infringed under § 271(a). Promega has failed to make this showing.

Before the district court, Promega's only argument regarding § 271(a) infringement that could have saved its damages award was that *all* of the accused products infringed under § 271(a). Promega cited only the testimony of Michelle Shepherd, one of Life's employees, in support of this argument. J.A. 2352–53. Promega abandoned this argument on appeal. In any event, we agree with the district court that Ms. Shepherd's testimony does not support the proposition that all of the accused products infringed under § 271(a). *Id.* (district court noting that Ms. Shepherd "did not know where all the kits were made" and "did not know whether foreign orders came through the United States"). Even when viewing the trial record in a light most favorable to Promega, Promega's arguments and the record do not support a finding that all of the accused products that did not infringe under § 271(f)(1) infringed under § 271(a).

Promega argues that the trial record could support a jury's decision to use a damages base other than the total sales figure. Promega's Statement at 10. As we discussed in our prior decision, we agree with Promega that there is evidence in the record to support some unspecified amount of § 271(a) infringement. For example, we identified Mr. Sandulli's testimony as "testimony explaining the sales records" that could have been relied on by the jury. *Promega I*, 773 F.3d at 1357 (citing Sandulli testimony at J.A. 6249–68). We also acknowledge that Life has admitted to some unquantified amount of infringement. *See* Promega's Statement at 13. In view of the foregoing, we concluded in *Promega I* that some unquantified number of Life's kits infringed under § 271(a). 773 F.3d at 1357. Promega requests that we "reinstate" this decision.

Promega's Statement at 10. Because the expiration of the Tautz patent precludes injunctive relief, and because Promega waived any argument for a damages calculation based on anything other than worldwide sales, any reinstatement of our prior decision on § 271(a) infringement would be moot.[12]

This is not, as Promega argues, a case involving a "general" damages verdict in which "one of multiple bases of liability" has "drop[ped] away after trial." Promega's Statement at 2. This is a case where there was a finding of waiver that carried forward as law of the case to subsequent proceedings in the litigation, as discussed in more detail in § IV, *infra*. The nature of the waiver under the circumstances of this case had the effect of limiting the trial evidence on damages to only the parties' stipulated worldwide sales figure. Because there was insufficient evidence to show that all worldwide sales infringed under § 271(a) or § 271(f)(1) (under its proper interpretation), there was no evidence to support a lost profits damages calculation under the narrow damages theory Promega crafted over the course of litigation.

For the foregoing reasons, we *affirm* the district court's decision granting Life's JMOL motion.

### IV. Promega's Motion for a New Trial

Promega argues that Life's admitted infringement, the Seventh Amendment,[13] § 284, and case law from

---

[12] For the same reasons, we decline to grant Promega's request for a new trial on infringement for kits comprising at least two components supplied from the United States, including the Identifiler kits. *See* Promega's Statement at 16–20.

[13] The Seventh Amendment recites:

various circuits require a new trial on damages or a grant of remittitur. *See* Promega's Statement at 14. Promega further argues that "general verdicts" on damages do not forfeit the right to damages under each theory individually underpinning the general verdict. *Id.* at 16 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1376–77 (Fed. Cir. 2013)). Therefore, Promega argues that it should have the opportunity to prove damages for Life's admitted infringement under § 271(a) and that it should be given an opportunity to prove infringement under § 271(f)(1) as to the accused Identifiler kits that, according to Promega, each contained multiple components supplied from the United States. *Id.* at 9, 16. Promega also argues that the district court improperly held that arguments in support of a motion for a new trial "must be raised in a JMOL opposition to preserve them," arguing that this holding "directly conflicts with Rule 50(d)."[14] *Id.* at 11, 13. Promega cites the Advisory Committee's guidance on Rule 50(d) that, "even after entry of judgment n.o.v. against him," a verdict-winner may "move for a new trial in the usual course." *Id.* at 11 (citing Fed. R. Civ. P. 50 advisory committee's note (1963)).

---

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

[14] Federal Rule of Civil Procedure 50(d) states: "Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment."

Life argues that retrial should not be granted on a waived theory presented for the first time post-judgment. Life's Statement at 16; *see also id.* at n.4 (citing, e.g., *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995) (rejecting new theory urged for the first time post-judgment)). In addition, Life argues that "Promega's reliance on Rule 50(d) is off base," because Rule 50(d) is merely a "procedural mechanism" that "allows a party to file a new trial motion within 30 days after JMOL is entered" but "does not mean such a motion substantively erases the losing party's prior litigation positions." Life's Statement at 10. That a motion for a new trial is procedurally permitted by Rule 50 after a grant of JMOL against a verdict winner does not, in Life's view, permit retrial as a matter of course on theories not pursued in the original trial. *See Id.* at 16 n.4 (collecting cases).

We agree with Life. Under the law of the case doctrine, the district court properly exercised its discretion by relying on its waiver finding from its JMOL ruling to support its decision to deny Promega's motion for a new trial. J.A. 2369. The district court also permissibly relied on the Seventh Circuit's holding that "[a] party may not introduce evidence or make arguments in a Rule 59 motion that could or should have been presented to the court prior to judgment." J.A. 2366 (quoting *United States v. 47 West 644 Route 38, Maple Park, Ill.*, 190 F.3d 781, 783 (7th Cir. 1999)). If Promega wanted to argue that the evidence at trial supported a damages calculation based on anything other than worldwide sales, it should have raised such an argument at trial and in response to Life's Rule 50(b) motion, which specifically attacked Promega's damages case on that very ground. Promega did not, choosing instead to continue to solely pursue an all-or-nothing damages strategy. Moreover, the district court afforded Promega a second opportunity to supplement the record and present evidence broken out by statutory subsection and quantity. *See* Life's Statement

at 2–3. Yet Promega declined to use this opportunity to prove any lesser damages amount. The district court acted within its discretion when it concluded that Life and the judicial system should not suffer the consequences of Promega's deliberate choice.

Promega improperly conflates what is procedurally permitted under Rule 50(d) with what is permitted under the district court's waiver finding as carried forward to subsequent stages of the litigation under the doctrine of law of the case. Under that doctrine, the district court did not abuse its discretion in finding that the waiver "continue[d] to govern the same issue[] in subsequent stages" of the litigation. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *Morris v. Am. Nat. Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993) ("The law of the case as a result of waiver is no different than a matter that becomes the law of the case as a result of argument."). Moreover, this is not a case where a change in law provides an exception to the law of the case doctrine. *Cf. Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 629–30 (Fed. Cir. 2015) (discussing change in law exception to law of the case doctrine). The only relevant law affecting the outcome in this case that was addressed by the Supreme Court was the "substantial portion" provision of § 271(f)(1). No law stood in the way of Promega's proving liability and damages separately under § 271(a), and Promega's reading of § 271(f)(1) was untested. Indeed, the district court itself ultimately rejected Promega's interpretation of § 271(f)(1), and so did the Supreme Court. And, from the time the district court gave Promega a second chance to put in evidence at trial to prove liability separately under § 271(a) and § 271(f)(1), Promega was on notice that its untested interpretation of § 271(f)(1) might not prevail. But Promega nonetheless declined to use its opportunity to establish entitlement to an alternative, smaller damages award.

Promega's arguments regarding the Seventh Amendment, § 284, remittitur, and its cited cases—including *Power Integrations*—are unavailing because a party's rights under the Seventh Amendment and § 284 and a party's right to remittitur may be waived. *See Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990) ("The Supreme Court has long recognized that a private litigant may waive its right to a jury and to an Article III court in civil cases. Waiver can be either express or implied."); *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) (holding that party waived argument for remittitur by not raising it in post-trial briefing); *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) ("[35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."). Promega cites no authority in support of the idea that a party is entitled to a new trial on arguments and theories that were waived in prior proceedings.[15]

This is an unusual case. Patent owners who prove infringement are typically awarded at least some amount of damages. *See Lindemann*, 895 F.2d at 1406. But, as explained above, a patent owner may waive its right to a

---

[15]   Promega cites several cases in support of its argument that it is entitled to a new trial on damages or a remittitur. *See generally* Promega Open. Br. at 36–40 (citing, e.g., *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011)). *Uniloc* and Promega's other cited cases are distinguishable from the instant case because none of them suggest that a district court is required to grant a new trial or a remittitur on an argument that a party has waived.

damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory. When a plaintiff deliberately takes a risk by relying at trial exclusively on a damages theory that ultimately proves unsuccessful, and, when challenged, does not dispute that it failed to present an alternative case for damages, a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record. We *affirm* the district court's decision on Promega's motion for a new trial and hold that the district court did not abuse its discretion in denying the motion.

Because we hold that Promega is not entitled to any damages, we *affirm* the district court's denial of Promega's motion for enhanced damages under § 284. We also *affirm* the district court's denial of Promega's motion for a permanent injunction, given that the Tautz patent has expired. Promega cannot be the "prevailing party" in this litigation under 35 U.S.C. § 285, and we therefore *affirm* the district court's denial of Promega's motion for an exceptional case finding. Finally, to the extent Promega asks us to exercise our own discretion to order a new trial, we deny such a request for the same reasons discussed herein for why the district court did not abuse its discretion in denying Promega's motion for a new trial. *See* Fed. R. Civ. P. 50(c) advisory committee's note (1963) (noting appellate courts' inherent authority to order a new trial).

## CONCLUSION

For the reasons above, we *affirm* the district court's grant of Life's motion for judgment as a matter of law and denial of Promega's motion for a new trial.

## AFFIRMED

COSTS

No costs.