2003 WY 10

**James D. MATHEWSON,**
**Appellant (Plaintiff),**

v.

**CITY OF CHEYENNE, Wyoming,**
**Appellee (Defendant).**

No. 02–187.

Supreme Court of Wyoming.

Jan. 23, 2003.

James D. Mathewson, Cheyenne, Wyoming, pro se, Representing Appellant.

Michael D. Basom, City Attorney; Mary B. Guthrie, Assistant City Attorney; and Bill Hibbler, Special Assistant City Attorney, Cheyenne, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] James D. Mathewson, a citizen of the City of Cheyenne, objected to the City's authorization of the sale of bonds to finance construction of a parking facility by resolution instead of by ordinance. The district court granted summary judgment to the City finding the statutes allowed the use of a resolution. We affirm.

### ISSUE

[¶ 2] The issue we must decide in this case is whether the district court properly granted summary judgment in favor of the City.

### FACTS

[¶ 3] On May 13, 2002, the Cheyenne City Council passed Resolution No. 4307 authorizing the sale and issuance of Refunding and Improvement Revenue Bonds in the amount of $9,575,000, the proceeds from which were to be used to construct an off-street parking facility in downtown Cheyenne. As authority for the bond issue, the resolution cited Wyo. Stat. Ann. § 15–1–801(b)(iii) (LexisNexis 2001), which provides that the procedure for issuing revenue or refunding revenue bonds is the same as prescribed by Wyo. Stat. Ann. §§ 35–2–424 through 35–2–436 (LexisNexis 2001). Those statutes provide the procedures for issuance of revenue bonds by hospital districts and allow such bonds to be authorized by resolution. The bonds were to be paid with the proceeds from the use of the parking facility. As additional security for the payment of the bonds, the City pledged its share of certain federal mineral royalties which it was entitled to receive. However, those royalties were also pledged to the repayment of revenue bonds issued by the City eight years earlier to finance the construction of the George S. Cox parking facility. In 1994, when the City issued those revenue bonds, it did so by ordinance instead of by resolution. Some of the 1994 revenue bonds remained outstanding, and, therefore, a portion of the proceeds from the sale of the 2002 revenue bonds was to go toward payment or refunding of those bonds, thereby enabling the City to provide the 2002 bond purchasers with a first lien on its federal mineral royal-

ties. The closing for the City's bonds was scheduled for May 28, 2002. However, the filing of this action on May 24, 2002, prevented the sale from occurring.

### STANDARD OF REVIEW

[¶ 4] We review summary judgments according to the following standards:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decision on issues of law.

*Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 10, 49 P.3d 1011, ¶ 10 (Wyo.2002) (citations omitted).

### DISCUSSION

[¶ 5] Mr. Mathewson objects to the City's use of a resolution instead of an ordinance to authorize the parking facility revenue bonds because citizens who opposed such a resolution did not have the right to petition for an initiative pursuant to which they could have elected to reverse the City's action—a right they would have had if the action had been pursuant to an ordinance. *See* Wyo. Stat. Ann. § 22–23–1005 (LexisNexis 2001). He bases his objection to the City's use of a resolution rather than an ordinance on an interpretation of the statutes governing the issuance of those bonds. He concedes these revenue bonds were not subject to the mandatory election requirement established by Article 16, Section 4 of the Wyoming Consti-

tution because they were payable solely from a special fund and not from taxes. *Frank v. City of Cody,* 572 P.2d 1106 (Wyo.1977); *Snyder v. City of Cheyenne,* 79 Wyo. 405, 334 P.2d 750 (1959).

[¶ 6] To determine what the statutes require with regard to the issuance of revenue bonds, we must follow our well established rules of statutory construction.

> We attempt to interpret statutes in accordance with the legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe statutes as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statutes on the same subject. We give effect to the plain language of unambiguous statutes. We resort to extrinsic aids of statutory interpretation, such as legislative history or intent, only when statutes are ambiguous.

*Dike v. State,* 990 P.2d 1012, 1018 (Wyo.1999) (some citations omitted); *see also Orona–Rangal v. State,* 2002 WY 134, ¶ 18, 53 P.3d 1080, ¶ 18 (Wyo.2002). Fundamental to this effort is our duty to give effect to the plain meaning of the language of the statute.

[¶ 7] Without question, § 15–1–801 authorizes the City to issue revenue bonds for parking facilities by following the procedures set forth in §§ 35–2–424 through 35–2–436, which plainly state bonds shall be authorized "by resolution." The district court properly found this statute is not ambiguous. No credible argument can be made that the term "resolution" is vague or ambiguous. Black's Law Dictionary defines resolution as "[a] formal expression of an opinion, intention, or decision by an official body or assembly (esp. a legislature)." Black's Law Dictionary 1313 (7th ed.1999). The Collegiate Dictionary defines it as "a formal expression of opinion, will, or intent voted by an official body or assembled group." Merriam–Webster's Collegiate Dictionary 997 (10th ed.1999). This court has considered the meaning of the term "resolution" as

> "simply an expression of opinion or mind or policy concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." 5 Eugene McQuillan, Municipal Corporations, Nature and Operation of Ordinances § 15.02 p. 59 (3rd Ed.1996).

*Cooper v. Town of Pinedale,* 1 P.3d 1197, 1207 (Wyo.2000).

[¶ 8] Mr. Mathewson does not even suggest the term "resolution" itself is ambiguous. Instead, he argues that, when § 15–1–801 is read together with § 35–2–425, an ambiguity is created. He contends the ambiguity stems from the language "[e]xcept as otherwise provided" which precedes the requirement for a resolution to authorize bonds and from the fact that the latter statute is directed to hospital trustees. We must presume that, when the legislature imposed the provisions contained in the hospital district statutes on municipalities seeking to construct off-street parking, it did so with full knowledge of the content of those provisions, and we can glean no ambiguity from the statutes themselves. Mr. Mathewson fails to direct us to any provision of § 15–1–801 or §§ 35–2–424 through 35–2–436 which "otherwise provides" in connection with procedures for the issuance of revenue bonds for off-street parking facilities. Consequently, we are left with the clear language of the statute as the final statement of legislative intent regarding the procedures to be followed in issuing revenue bonds for that purpose.

[¶ 9] Mr. Mathewson urges, without authority, the legislature must have intended a municipality should use its "highest form of authorization,"—e.g., an ordinance—because a resolution is the "highest form of authorization" for a hospital district. We simply cannot engage in such creative reasoning in an effort to insert language into the statutes that the legislature omitted. *Miller v. Bradley,* 4 P.3d 882, 888 (Wyo.2000) (we will not expand the plain language of a statute to encompass requirements beyond those clearly set out by the legislature); *Erhart v. Flint*

*Engineering & Construction,* 939 P.2d 718, 722 (Wyo.1997) (a basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature; this court should not read words into a statute when the legislature has chosen not to include them).

[¶ 10]   In a final effort to create ambiguity where none existed, Mr. Mathewson points to an entirely different statute—the Downtown Development Authority (Wyo. Stat. Ann. §§ 15–9–201 through 15–9–223 (LexisNexis 2001))—adopted after the statutes upon which the City relied for its actions, which allows municipalities through a separate development authority or on their own to issue bonds for public parking facilities and requires such be done by ordinance. The City complains Mr. Mathewson did not raise this issue below.   A review of the record indicates that, although he did not provide the district court with a discussion of that statute, he did mention it as an example of other revenue bond statutes which required ordinances.   In the interest of affording this citizen a full and complete hearing of his complaints, we will address this argument.

[¶ 11]   Simply because the legislature chose to make two different options available to municipalities to construct parking facilities does not mean either provision automatically becomes ambiguous.   Nor does it mean the legislature intended to repeal the original provision.   Had the legislature so intended, it could readily have done so.   It did not directly repeal the original provision, and, absent such direct repeal, Mr. Mathewson has the burden of showing the legislature intended an implied repeal.   *Shumway v. Worthey,* 2001 WY 130, ¶ 15, 37 P.3d 361, ¶ 15 (Wyo.2001).

> [O]ur longstanding rule is that repeals by implication are not favored and will not be indulged if there is any other reasonable construction.   One asserting implied repeal bears the burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of affecting a repeal. Furthermore, it must be shown that the later statute is so repugnant to the earlier

one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject.

*Id.* Mr. Mathewson has met no part of this burden here.   Looking to the plain meaning of the language utilized by the legislature in each case, we find no conflict.   Both provisions can be given their plain meaning without hindering the application of the other. The result is the City had the option of taking either approach.   *Board of County Commissioners of County of Albany v. White,* 79 Wyo. 420, 335 P.2d 433 (1959). Whether this is a wise policy, whether it deprives citizens of rights granted by the legislature in other statutes, or whether, in the opinion of a citizen, it grants too much leeway to the governing body of a municipality is not a question for this court.   Instead, Mr. Mathewson and other citizens similarly disposed must make their case to the legislature.

[¶ 12]   The district court also properly concluded our opinion in *Cooper,* 1 P.3d 1197, "supports the City's use of a resolution."   In that case, the Town authorized a promissory note for the construction of a water system by resolution and not by ordinance.   We held the note did not constitute a bond which the statutes required to be authorized by an ordinance.   In addition, we concluded the resolution which authorized the promissory note did not constitute a legislative act which Wyo. Stat. Ann. § 15–1–114(a) (LexisNexis 2001) requires to be authorized by an ordinance.   In discussing the distinction between a resolution and a legislative act requiring an ordinance, we relied upon 5 Eugene McQuillan, Municipal Corporations § 15.02 at 59 (3d ed.1996) for the proposition that " 'a resolution deals with matters of a special or temporary character;   an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed.' " *Cooper,* 1 P.3d at 1207. When we apply that reasoning here, we conclude the resolution authorizing the revenue bonds in question was not a permanent rule of conduct contemplated by the term "legisla-

**1234**

tion." Our holding as stated in *Cooper* applies with equal force in this case. "Under these circumstances, we can only conclude that absent a specific requirement that it act by ordinance, the Town could act by resolution." *Id.; see also Thomas v. Jultak*, 68 Wyo. 198, 231 P.2d 974 (1951).

[¶ 13] Finally, Mr. Mathewson argues the City's use of an ordinance to authorize the 1994 bond issue for the George S. Cox parking facility somehow required that it utilize an ordinance for the issuance of the 2002 bond issue. Although it is not completely clear from his brief, Mr. Mathewson is apparently arguing that, because the proceeds from the 2002 bonds were to be used in part to "advance, refund and defease," or repay, the 1994 bonds which were still outstanding, the ordinance authorizing those earlier bonds was somehow "repealed" by the City's 2002 resolution and an ordinance cannot be repealed by a resolution. The district court found "[t]he fact that the City had previously issued off-street parking facility revenue bonds by ordinance is irrelevant." We agree. The City had the option of using either an ordinance or a resolution when the statute did not direct the use of an ordinance. Mr. Mathewson's suggestion that the later resolution constructively repealed the 1994 ordinance is not persuasive. He cites 6 Eugene McQuillan, Municipal Corporations § 21.09 at 260 (3d ed.1998) for the definition of "constructive repeal" which on its face does not apply to the 2002 resolution. A constructive repeal occurs when the later ordinance "contains provisions so contrary to or irreconcilable with those of the earlier ordinance that only one of the two can stand in force; ... The repeal of an ordinance is accomplished when it is destroyed, abolished, abrogated, cancelled, annulled, recalled, or rescinded by a later one." 6 Eugene McQuillan, Municipal Corporations § 21.09 at 260 (3d ed.1998). The 2002 resolution merely authorized the use of the proceeds from the later bond issue to repay the outstanding 1994 bonds before they became due. It in no way annulled or rescinded the earlier ordinance which originally authorized the issuance of the 1994 bonds.

[¶ 14] Mr. Mathewson cites no authority which prohibits the City from utilizing the procedures explicitly authorized by § 15–1–801. The district court found he presented no evidence the City failed to follow the procedures outlined in § 15–1–801 and §§ 35–2–424 through 35–2–436. On appeal, he does not contest that finding. Consequently, we affirm the district court's summary judgment and hold the City's use of a resolution to authorize the 2002 revenue bonds for a parking facility was in compliance with the statutes adopted by the legislature.