# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 45

### OCTOBER TERM, A.D. 2019

### April 2, 2020

| | |
|---|---|
| BLACK DIAMOND ENERGY OF DELAWARE, INC., a foreign corporation,<br><br>Appellant<br>(Plaintiff),<br><br>v.<br><br>WYOMING OIL AND GAS CONSERVATION COMMISSION,<br><br>Appellee<br>(Defendant). | S-19-0018, |
| BLACK DIAMOND ENERGY OF DELAWARE, INC., a foreign corporation,<br><br>Appellant<br>(Plaintiff),<br><br>v.<br><br>WYOMING OIL AND GAS CONSERVATION COMMISSION and WYOMING OFFICE OF STATE LANDS AND INVESTMENTS,<br><br>Appellees<br>(Defendants). | S-19-0128 |

*Appeal from the District Court of Johnson County*
The Honorable William J. Edelman, Judge

*Representing Appellant:*

Nick A. Swartzendruber and Rin Karns of Poulson, Odell & Peterson, LLC, Denver, Colorado. Argument by Mr. Swartzendruber.

*Representing Appellees:*

Bridget Hill, Wyoming Attorney General; Brandi Monger, Deputy Attorney General; Megan L. Pope, Senior Assistant Attorney General; Eric A. Easton, Senior Assistant Attorney General; Micah A. Christensen, Assistant Attorney General. Argument by Ms. Monger and Mr. Christensen.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Black Diamond Energy of Delaware, Inc. (BDED) and Black Diamond Energy, Inc. (BDI), separate companies, each operated wells on separate state oil and gas leases. They each posted required bonds with the Wyoming Oil and Gas Conservation Commission (Commission) and/or the Wyoming Office of State Lands and Investments (WOSLI). After the Commission ordered the bonds forfeited, BDED did not seek administrative review under the Wyoming Administrative Procedures Act, Wyo. Stat. Ann. §§ 16-3-101 to 16-3-115 (LexisNexis 2019) (WAPA), and Wyoming Rule of Appellate Procedure 12, but instead filed two lawsuits in Johnson County in an attempt to challenge the forfeiture (Case Nos. 2017-0074 and 2018-0011). It claimed certain statutes, Wyo. Stat. Ann. § 30-5-113(a) (LexisNexis 2019) from the Wyoming Oil and Gas Conservation Act (Conservation Act), and the Wyoming Governmental Claims Act (Wyo. Stat. Ann. §§1-39-101 to 1-39-120) (LexisNexis 2019) (Claims Act) authorized such direct action. The district court dismissed both lawsuits because BDED had failed to comply with WAPA. BDED appealed from both dismissals, and we consolidated the appeals. We affirm the dismissals but for reasons different than those provided by the district court. However, we remand Case No. 2018-0011 to the district court to clarify the dismissal is without prejudice.

## ISSUES

[¶2]    We restate the issues as follows:

1.  Was BDED's complaint against the Commission in Case No. 2017-0074 properly brought pursuant to § 30-5-113(a)?

2.  Did BDED bring its Claims Act complaint in Case No. 2018-0011 in the proper venue?

## FACTS

[¶3]    BDED is a Delaware corporation with its principal place of business in Buffalo, Wyoming. BDI is a Wyoming corporation. Both are oil and gas exploration companies. Despite the similarities in their names, they claim they are separately owned and managed. The problems in this case allegedly arose when the Commission and WOSLI treated them as the same entity.

[¶4]    In 2007, BDED purchased a State of Wyoming oil and gas lease. The lease had a producing well known as the Castle Creek Well. To secure the lease, BDED posted bonds totaling $181,670 with WOSLI (the WOSLI bonds). Of that amount, $171,670 was allocated to secure plugging the well at the end of production. BDED also posted a $75,000 blanket bond with the Commission to ensure BDED's compliance with the Conservation

1

Act and the Commission's rules and orders.  *See* Oil & Gas Conservation Comm'n Rules, Ch. 3, § 4(a)(i), (ii), (b)(i).  The Castle Creek Well lease is the only lease BDED operated. BDI, on the other hand, operated numerous wells on both state and fee lands in Wyoming and posted its own separate bonds with the Commission or WOSLI.  First Interstate Bank held both BDED's and BDI's bonds.

[¶5]   In October 2011, WOSLI terminated one of BDI's leases.  Shortly thereafter, WOSLI sent a letter to First Interstate Bank stating it was "calling the bonds" and instructing the bank to forward all money to the Commission.  The bank allegedly sent BDI's bonds and BDED's WOSLI bonds to the Commission.  Almost three years later, in 2014, the Commission held a contested case hearing and foreclosed BDI's bonds.  BDED was not a party to those proceedings.

[¶6]   On June 30, 2016, the Commission required a mechanical integrity test (MIT) on the Castle Creek Well.  Back in 2011, when WOSLI terminated BDI's lease, WOSLI allegedly told both Black Diamond entities that they could not enter onto any WOSLI land. In its lawsuits BDED claimed:  "[I]n light of WOSLI's treatment of BDED and BDI as one and the same entity, and its threats concerning trespass, BDED did not feel that it was in a position to enter onto WOSLI's property to conduct an MIT."  Its attempts to obtain WOSLI's permission to enter the land and to "explain the situation to Commission staff" were unsuccessful.  As a result, BDED hired a contractor to conduct the test.  The Commission decided the contractor's test was unsatisfactory and, on December 5, 2016, ordered BDED to show cause at a hearing why its $75,000 blanket bond should not be forfeited for failing to satisfactorily perform the MIT.  BDED requested cancellation of the hearing and an accounting of the WOSLI bonds.  The Wyoming Attorney General's office informed BDED the WOSLI bonds had been forfeited by the 2014 Commission order relating to BDI's bonds and the funds had been used to plug BDI's wells.  On July 11, 2017, after a hearing, the Commission entered an order forfeiting the blanket bond and authorizing its staff to plug and abandon the Castle Creek Well.

[¶7]   Eighty-seven days later, on October 6, 2017, BDED filed a lawsuit against the Commission under § 30-5-113(a) of the Conservation Act, challenging the validity of the July 2017 order forfeiting the blanket bond (Case No. 2017-0074).  The Commission moved to dismiss under Wyoming Rule of Civil Procedure 12(b)(1), arguing the district court was without jurisdiction because BDED had brought its complaint under § 30-5-113 of the Conservation Act, which it claimed was repealed by Section 17 of the original WAPA legislation and by § 16-3-114(b).  According to the Commission, BDED's only avenue of relief to challenge the Commission's order was to file a petition for review with the district court within 30 days of the order under Wyoming Rule of Appellate Procedure 12.04(a).  Because it did not do so, the Commission argued the district court lacked subject matter jurisdiction.  The district court granted the Commission's motion to dismiss.  It agreed with the Commission that it lacked jurisdiction over BDED's complaint

2

because § 30-5-113 had been repealed in favor of WAPA. However, it relied on § 30-5-107 as the basis for repeal, rather than Section 17 or § 16-3-114(b).

[¶8] While Case No. 2017-0074 was pending, BDED filed a second lawsuit against the Commission and WOSLI, this time under the Claims Act (Case No. 2018-0011). BDED alleged conversion and breach of contract relating to both the WOSLI bonds and the blanket bond and sought declaratory relief and an accounting. The Commission and WOSLI moved to dismiss the lawsuit for, among other things, improper venue. The district court granted the motion for the same reasons it dismissed Case No. 2017-0074.

[¶9] BDED appealed from both dismissals. We consolidated the appeals.

## DISCUSSION

### 1. *Was BDED's complaint against the Commission in Case No. 2017-0074 properly brought pursuant to § 30-5-113(a)?*

[¶10] The district court dismissed Case No. 2017-0074 for lack of subject matter jurisdiction under W.R.C.P. 12(b)(1). Our review is de novo. *Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018). In conducting our review, "'we accept the facts alleged in the complaint . . . as true and view them in the light most favorable to the non-moving party.'" *Id.* (quoting *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)). We also review de novo a district court's interpretation of a statute. *Sheridan Newspapers, Inc. v. Bd. of Trs. of Sheridan Cty. Sch. Dist. # 2*, 2015 WY 70, ¶ 7, 350 P.3d 266, 268 (Wyo. 2015) (citing *Horning v. Penrose Plumbing & Heating, Inc.*, 2014 WY 133, ¶ 10, 336 P.3d 151, 153 (Wyo. 2014)).

[¶11] Section 30-5-113 provides in relevant part:

> (a) Any person adversely affected by and dissatisfied with any rule, regulation, or order made or issued hereunder, may within ninety (90) days after the entry thereof bring a civil suit or action against the commission or the state oil and gas supervisor or both in the district court of Laramie county, or in the district court of the county in which the complaining person resides, or in the U.S. district court for Wyoming, (if it otherwise has jurisdiction) and not elsewhere, to test the validity of any provision of this act, or rule, regulation, or order, and to secure an injunction and other appropriate relief, including all rights to appeal under applicable rules of civil procedure. Any case on appeal shall have precedence over any other case then pending in such court.

3

(b) In addition to the foregoing, any person who may feel himself aggrieved by any rule, regulation, order or decision of the commission may have an appeal as provided by law, with respect to appeals from decisions of the board of land commissioners. All proceedings on appeal, except as herein otherwise provided, shall be under the provisions of the code of civil procedure as in other civil cases.

* * * *

(e) A suit or an appeal involving a test of the validity of any provision of this act, or a rule, regulation, or order shall be advanced for trial and be determined as expeditiously as feasible, and no postponement or continuance thereof shall be granted unless deemed imperative by the court. The court shall consider all the evidence, shall not be bound by any finding of fact or conclusion of law made by the commission, shall hold a trial de novo, shall pass on the credibility of witnesses and the weight to be given to their testimony, and shall determine independently all issues of fact and of law with respect to the validity and reasonableness of the provision, rule, regulation, or order complained of.

[¶12]   BDED brought its complaint against the Commission in Case No. 2017-0074 under § 30-5-113(a).   The Commission argued in the district court, and the district court concluded, the complaint was improperly brought under § 30-5-113 because that statute had been repealed by WAPA.  The district court relied on § 30-5-107 of the Conservation Act to support repeal; the Commission relied on, and continues to rely on, Section 17 of the original WAPA legislation and § 16-3-114(b).

[¶13]  While the district court's analysis and the Commission's arguments relate to § 30-5-113 as a whole, our concern is limited to § 30-5-113(a) and we tailor our analysis accordingly.  As we will now explain, neither § 30-5-107 nor Section 17 and § 16-3-114(b) support repeal of § 30-5-113(a).  Nevertheless, BDED's complaint under § 30-5-113(a) was improper because the scope of that statutory provision is akin to a declaratory judgment action under Wyo. Stat. Ann. §§ 1-37-101 to 1-37-115 (LexisNexis 2019), which can only be brought in administrative matters in limited circumstances, none of which are present here.

### Express Repeal—Section 30-5-107

[¶14]  The district court decided § 30-5-113(a) was expressly repealed by § 30-5-107, which states:  "This act [§§ 30-5-105 through 30-5-107] shall be supplemental but subordinate to the Wyoming Administrative Procedure Act . . . ."  As a result, the court concluded WAPA controlled and BDED should have timely filed a petition for review.

4

BDED argues § 30-5-113(a) is not within the bracketed language and therefore outside the scope of § 30-5-107. The bracketed language, however, was not included in § 30-5-107, as enacted by the legislature.

[¶15] Section 30-5-107 was part of Senate File 88, which initially contained only two sections. *See* S.F. 88 (1965), available at wyominglegislation.wyo.gov. *See also,* Digest of Senate Journal of the 38th Wyoming State Legislature, S.F. 88, at 130-31 (1965). Section 1 (now codified at § 30-5-105) allowed the Commission to appoint a hearing examiner to conduct a hearing on any matter before the Commission and to issue a report and recommendation to the Commission. *Id.* Section 2 (now found at § 30-5-106) provided the situations in which the Commission itself (not a hearing examiner) must hold the hearing. *Id.* Section 3 (now § 30-5-107) was added by the Wyoming House of Representatives and stated: "*This Act* shall be supplemental but subordinate to the Wyoming Administrative Procedure Act (Original House Bill No. 196, 38th Legislature) if the same is enacted." *Id.* (emphasis added). The Senate approved the addition without change and all three sections were signed into law. *Id.* Importantly, the session law did not include the bracketed language. *See* 1965 Wyo. Sess. Laws ch. 175, § 3. The bracketed language first appeared in the 1965 Cumulative Supplement to the Wyoming Statutes. Wyo. Stat. Ann. § 30-219.3 (1965 Cumm. Supp.) (now codified at § 30-5-107). It was added by the compiler of the statutes.

[¶16] The general rule is that a compiler cannot make changes to a law which alter its meaning because the complier has no legislative power. *See Falcon Cable Media LP v. Ark. Pub. Serv. Comm'n*, 425 S.W.3d 704, 710 (Ark. 2012) (to the extent the compiler's substitution of the word "subchapter" for the word "act" in the statute "has the effect of altering the meaning of the statute, the [compiler] is not authorized to change the substance or meaning of any provision of the Arkansas Code or any act of the General Assembly"); *Granville v. Minneapolis Pub. Sch. Special Sch. Dist. No. 1*, 732 N.W.2d 201, 208 (Minn. 2007) ("Although the Minnesota Statutes are prima facie evidence of the laws of Minnesota, they are not the laws themselves. The actual laws of Minnesota as passed by the legislature . . . are contained in the session laws . . . . If the revisor has erred in codifying legislative enactments, it is the duty of the judiciary to give effect to the legislative intent and not to the letter of the law as codified because the revisor lacks the authority to make changes in the law.") (citation omitted); *Indep. Fin. Inst. v. Clark*, 990 P.2d 845, 853-54 (Okla. 1999) ("Generally, a publisher's correction becomes part of the statute if, as here, the publisher did not change the substantive meaning of the statute as it was originally intended by the Legislature."). *See also, United States v. Welden*, 377 U.S. 95, 98 n.4, 84 S.Ct. 1082, 1096 n.4, 12 L.Ed.2d 152 (1964) ("[W]here, as here, the 'change of arrangement' [of a statute] was made by a codifier without the approval of Congress, it should be given no weight."); Sutherland Statutes & Statutory Construction, § 28:4 (7th ed. 2019) ("Even where a compilation has been given legislative approval it does not affect the status of the law and the final authority remains in the statutes as originally enacted by the legislature."). We need not decide, however, whether the compiler's addition of the

5

bracketed language in § 30-5-107 altered the statute's meaning.  That is because even if the legislature intended § 30-5-113(a) to be within the scope of § 30-5-107, § 30-5-107 did not effect an express repeal of § 30-5-113(a).

[¶17] Section 30-5-107 states the Conservation Act "shall be supplemental but subordinate to" WAPA.  The Conservation Act does not define that phrase and we have yet to interpret it.  We turn to the ordinary meaning of the words to discern the legislature's intent.  *See Delcon Partners LLC v. Wyo. Dep't of Rev.*, 2019 WY 106, ¶ 9, 450 P.3d 682, 685 (Wyo. 2019) ("Our primary objective in interpreting statutes is to give effect to the legislature's intent.  . . .  The best evidence of the legislature's intent is the plain and ordinary meaning of the words used in the statute.") (citation omitted).

[¶18] The plain meaning of "supplemental" is "serving to supplement."  *See* https://www.merriam-webster.com/dictionary/supplemental.  "Supplement" means "something that completes or makes an addition" or "a part added to or issued as a continuation of a book or periodical to correct errors or make additions."  *See* https://www.merriam-webster.com/dictionary/supplement.  Black's Law Dictionary defines "supplemental" as "supplying something additional; adding what is lacking." "Subordinate" means "placed in or occupying a lower class, rank, or position: INFERIOR." *See* https://www.merriam-webster.com/dictionary/subordinate.  Black's Law Dictionary defines it as "to place in a lower rank, class, or position; to assign a lower priority to." Applying these plain meanings, § 30-5-107 states the Conservation Act shall add to but be inferior to WAPA.  This language is not the equivalent of a repeal, which means to "rescind or annul."  *See* https://www.merriam-webster.com/dictionary/repeal.  Had the legislature intended § 30-5-107 to expressly repeal the Conservation Act in favor of WAPA, it could have easily said so by using the word "repeal" or "supersede"; it did not.  *See, e.g., MSC v. MCG*, 2019 WY 59, ¶ 5, 442 P.3d 662, 665 (Wyo. 2019) (stating the Wyoming legislature repealed Wyo. Stat. Ann. § 20-2-304(b) on July 1, 2018; the repealing law, 2018 Wyo. Sess. Laws, ch. 42, § 2, expressly stated "W.S. 20-2-304(b) and 20-2-305 are repealed"); *Mem'l Hosp. of Sweetwater Cty. v. Menapace*, 2017 WY 131, ¶ 14  n.7, 404 P.3d 1179, 1183 n.7 (Wyo. 2017) (stating Wyo. Stat. Ann. § 1-39-111 was repealed in 1986; the repealing legislation, Wyo. Sess. Laws, ch. 89, § 3, expressly stated "W.S. 1-39-111 is repealed").

[¶19]  Section 30-5-107 did not expressly repeal § 30-5-113(a).

### *Implied Repeal—Section 17 of the original WAPA legislation and § 16-3-114(b)*

[¶20]  The Commission argues Section 17 of the original WAPA legislation (which is no longer in the statutes) and § 16-3-114(b) (which the Commission mistakenly refers to as § 16-3-114(a)) expressly repealed § 30-5-113(a).  We start with Section 17, which stated:

6

> All acts or parts of acts which are inconsistent with the provisions of this Act are hereby repealed, but this repeal does not affect pending proceedings.  Provided, however, to the extent not inconsistent herewith existing procedures provided for by statute shall be deemed preserved and the procedures provided for by this Act shall be in addition and supplementary thereto.

1965 Session Laws, ch. 108, § 17.  According to the Commission, WAPA repealed § 30-5-113(a) because it is "inconsistent" with it.

[¶21]  The Commission frames its argument as one of <u>express</u> repeal, but the proper analysis is one of <u>repeal by implication</u>.  An express repeal occurs when a statute "contains an express provision repealing a particular act or a part of an act."  Sutherland, § 23:7.  In contrast, a repeal by implication occurs when a subsequent statute "declare[s] an intent to repeal preexisting laws without mention or reference to such laws."  *Id.*, § 23:9.  Section 17 did not mention or reference § 30-5-113.  Rather, it stated WAPA repeals all acts or parts of acts "inconsistent" with it.  A similar argument was raised in *Thunderbasin Land, Livestock & Inv. Co. v. Cty. of Laramie*, 5 P.3d 774, 780-81 (Wyo. 2000), with respect to whether Section 17 repealed Wyo. Stat. Ann. § 24-3-121 (LexisNexis 1999), which required damages in a road establishment case to be decided after a trial de novo in the district court.  We analyzed whether Section 17 <u>impliedly</u> repealed Wyo. Stat. Ann. § 24-3-121.  *Id.* at 781-82.

[¶22]  "'[R]epeals by implication are not favored and will not be indulged if there is any other reasonable construction.'"  *Thunderbasin*, 5 P.3d at 781 (quoting *Emulsified Asphalt, Inc. of Wyo. v. Transp. Comm'n of Wyo.*, 970 P.2d 858, 863 (Wyo. 1998)).  The Commission bears a heavy burden in showing Section 17 impliedly repealed § 30-5-113(a).  *Id.*  It must demonstrate "'beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of effecting a repeal'" and "'the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject.'"  *Id.* (quoting *Emulsified Asphalt*, 970 P.2d at 863).

[¶23]  BDED argues the Commission has not met its burden because, *inter alia*, WAPA is not "so repugnant" to § 30-5-113(a) that the two cannot logically stand together.  Indeed, as the more specific statute, BDED argues § 30-5-113(a) trumps WAPA.  For this proposition, it relies on *Thunderbasin*.

[¶24]  In *Thunderbasin,* the Board of County Commissioners of Laramie County (Board) established a public road on Thunderbasin's land.  *Thunderbasin*, 5 P.3d at 776.  As part of that process, the Board awarded damages to Thunderbasin.  *Id.* at 777.  Believing the

7

damage award to be inadequate, Thunderbasin sought judicial review in the district court. *Id.* The district court initially decided Thunderbasin was entitled to a trial de novo to determine damages under § 24-3-121, which provided: "The amount of damages to which the claimant shall be entitled on such appeal shall be ascertained in the same manner as in a civil action . . . ." *Id.* at 777-78 (emphasis removed). The district court eventually reversed course and agreed with the Board that § 24-3-121 had been impliedly repealed by Section 17 of WAPA. *Id.* at 777, 781. We disagreed:

> The Board has not demonstrated in this instance that the WAPA is so repugnant to the [road establishment statute] that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject. . . . The contentions of the Board fall far short of carrying its burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of effecting a repeal . . . *Instead, as we have explained, there is a rather comprehensive scheme for exercising the power of eminent domain, of which the establishment of a county road is only one part, and that scheme almost universally incorporates a right to a jury trial to determine the damages to the landowner.* The limited reach of the WAPA into this comprehensive scheme is quite contrary to the burden assigned to the Board.

*Id.* at 781-82 (citations and quotations omitted) (emphasis added).

[¶25] *Thunderbasin* is not as helpful to BDED as it may seem. In that case, § 24-3-121 was part of the road establishment statutes, which "are simply a method of exercising the power of eminent domain." *Id.* at 780. Because the power of eminent domain "implicates [the] constitutional protection of property rights," it "almost universally incorporates a right to a jury trial to determine the damages to the landowner." *Id.* at 782. In such circumstances, we could not say the legislature intended the limited reach of WAPA to supersede the normal right to a jury trial on damages in an eminent domain proceeding. *Id.* In contrast, we have never held the Conservation Act to incorporate a right to a jury trial.

[¶26] While BDED urged that *Thunderbasin* provided an answer about implied repeal, the Commission relied on *City of Evanston v. Whirl Inn, Inc.*, 647 P.2d 1378 (Wyo. 1982), for the proposition that § 30-5-113(a) was repealed by WAPA. The Commission's assertion fares no better than BDED's. Whirl Inn, a restaurant and liquor store, sought to renew its liquor license with the City of Evanston. *Id.* at 1381. The City renewed the liquor license but restricted the sale of liquor to Whirl Inn's drive-in window. *Id.* at 1380, 1382. Whirl Inn appealed to the district court, which heard the appeal as a "trial de novo" pursuant

to Wyo. Stat. Ann. § 12-4-104(f) (West 1977) and reversed the City's decision limiting Whirl Inn's sales of liquor to the drive-in window. *Id*. at 1382. The City appealed, challenging in part the procedures and standard of review the district court applied to the City's decision. *Id*. at 1380-81. Before addressing those issues, we addressed whether WAPA applied. *Id*. at 1382-85. We concluded it did not because it expressly excluded a city's governing body as an "agency." *Id*. at 1385. In doing so, however, we explained that "[p]rior to the adoption in 1965 of [WAPA], appeals from administrative agencies were frequently subject to a trial de novo in the district court." *Id*. at 1382. "However the hearings were not conducted as trials de novo in the pure sense of that term" because, due to separation of powers concerns, we had earlier limited such hearings to "'whether on the facts proven there was "an illegal exercise" of the Board's discretion, a case of fraud, or a "grave abuse of discretion."'" *Id*. at 1382-83 (quoting *L. L. Sheep Co. v. Potter*, 224 P.2d 496, 498 (1950)). We continued: "With the adoption of the [WAPA] in 1965, the trial de novo provisions were replaced and all judicial review of an administrative agency's action was required to be conducted in accord with what is now [Wyo. Stat. Ann § 16–3–114(c)]." *Id*. at 1384.

[¶27] *Whirl Inn*'s statement that WAPA replaced all trial de novo provisions does not apply to the type of hearing authorized by § 30-5-113(a). As we explain below, this statute does not authorize a separate de novo action to review administrative action. Rather, § 30-5-113(a) authorizes a claim that is not inconsistent with the WAPA as described in *Whirl Inn*. In this case, the Commission has not satisfied its burden because WAPA is not "so repugnant" to § 30-5-113(a) that the two cannot logically stand together.

[¶28] Our decision and analysis in *Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 5, 61 P.3d 1229, 1231-32 (Wyo. 2003), is instructive. There, Mr. Mathewson objected to the City's use of a resolution under Wyo. Stat. Ann. § 15-1-801 (LexisNexis 2001) rather than an ordinance to authorize the sale of bonds to finance the construction of a parking facility. He argued a subsequently enacted statute, which allowed cities through a separate development authority or on their own to enact ordinances for the purpose of issuing bonds for public parking facilities, repealed § 15-1-801. *Id*., ¶ 10, 61 P.3d at 1233. We concluded the subsequently enacted statute did not expressly repeal § 15-1-801: "Simply because the legislature chose to make two different options available to municipalities to construct parking facilities does not mean . . . the legislature intended to repeal the original provision. Had the legislature so intended, it could readily have done so." *Id*., ¶ 11, 61 P.3d at 1233. Nor was there an implied repeal: "Looking to the plain meaning of the language utilized by the legislature in each [statute], we find no conflict. Both provisions can be given their plain meaning without hindering the application of the other. The result is the City had the option of taking either approach." *Id*. (citation omitted).

[¶29] The same conclusion ensues here. As we explain below, § 30-5-113(a) allows a party to "test the validity" of a commission order to the same extent we allow a party to bring a declaratory judgment action concerning administrative matters. Declaratory

judgment actions concerning such matters are limited to cases where the "desired relief concerns the validity and construction of agency regulations, or . . . the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based." *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo. 1982). Such declaratory relief actions have logically co-existed with WAPA without conflict since at least 1982, when *Rocky Mountain* was decided. *See also* WRAP 12.12 ("The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, *in actions for a declaratory judgment based on agency action or inaction,* in actions seeking any common law writ to compel, review or restrain agency action shall be available by independent action notwithstanding any petition for review.") (emphasis added). There is no conflict and certainly no repugnancy.

[¶30]  The Commission also relies on § 16-3-114(b) of WAPA, which it claims gives "this Court the sole authority to promulgate rules of procedure to conduct its review of administrative action that 'supersede existing statutory provisions.'"  It points to Rule 12.04(a) of our rules of appellate procedure, which provides:  "[E]ven where a statute allows a different time limit on appeal, the petition for review shall be filed within 30 days after service upon all parties of the final decision of the agency . . . ."  According to the Commission, because § 30-5-113(a) allows a different time limit on appeal, it was expressly superseded.

[¶31]  Section 16-3-114(b) provides:

> (b) The supreme court's authority to adopt rules governing review from agencies to the district courts shall include authority to determine the content of the record upon review, the pleadings to be filed, the time and manner for filing the pleadings, records and other documents and the extent to which supplemental testimony and evidence may be taken or considered by the district court.  The rules adopted by the supreme court under this provision may supersede existing statutory provisions.

Again, the appropriate analysis is implied repeal as § 16-3-114(b) does not contain an express provision specifically repealing § 30-5-113(a).  Although § 16-3-114(b) allows us to adopt rules governing review from agencies to the district court including "the time and manner for filing the pleadings," it only states such rules "*may* supersede existing statutory provisions."  Section 16-3-114(b) (emphasis added).  We recognize limits on our rule making authority consistent with our general rule that although Wyo. Const. art. 5, § 2 gives us the authority to establish <u>procedural rules</u> for the state's inferior courts that supersede conflicting statutes, *Kittles v. Rocky Mountain Recovery, Inc*. 1 P.3d 1220, 1223 (Wyo. 2000), we cannot supersede a <u>substantive</u> statutory right through our rule-making authority, *Goodman v. State*, 644 P.2d 1240, 1243 (Wyo. 1982).  We need not decide,

10

however, whether § 30-5-113(a) is substantive. Rule 12.04 is not so repugnant to § 30-5-113(a) that they cannot logically stand together. In fact, they do not conflict as § 30-5-113(a) does not provide for a "different time limit on appeal"; rather, it provides a time limit for filing an original action.

[¶32] Section 17 of WAPA and § 16-3-114(b) did not implicitly repeal § 30-5-113(a).

### *Scope of § 30-5-113(a)*

[¶33] Although § 30-5-113(a) was not expressly or impliedly repealed by WAPA, that does not end the discussion. We are still left to decide whether BDED's complaint was proper under § 30-5-113(a). We note at the outset that the use of § 30-5-113(a) to challenge a commission order is novel. With respect to cases reaching this Court to this point, parties aggrieved with such orders have filed a petition for review under WAPA pursuant to Rule 12.04(a). *See, e.g., Exaro Energy III, LLC v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 2, 455 P.3d 1243, 1246 (Wyo. 2020); *Exxon Mobil Corp. v. Wyo. Oil & Gas Conservation Comm'n*, 2013 WY 32, ¶ 22, 297 P.3d 782, 788 (Wyo. 2013); *Moncrief v. Wyo. Oil & Gas Conservation Comm'n*, 981 P.2d 913, 914 (Wyo. 1999). As a result, we have yet to interpret the scope of § 30-5-113(a). We do so now. Again, our main objective is to discern the legislature's intent from the plain and ordinary meaning of the words used. *See Delcon Partners LLC*, ¶ 9, 450 P.3d at 685 (citations omitted).

[¶34] Section 30-5-113(a) allows an adversely affected and dissatisfied person to bring a civil suit or action "to *test the validity* of any provision of this act, or rule, or regulation, or order." (Emphasis added). When asked at oral argument what the phrase "to test the validity" means, BDED's counsel responded he believed it to be in the nature of a declaratory judgment action. We agree.

[¶35] Section 30-5-113 provides two distinct avenues for relief to a party aggrieved by a commission order. Subsection (a) allows a "person adversely affected by and dissatisfied with any rule, regulation or order" to file an original action in the district court "to test the validity of any provision of this act, or rule, regulation, or order." Subsection (b) allows a "person who may feel himself aggrieved by any rule, regulation, order or decision of the commission" to "have an appeal as provided by law." Unlike subsection (a), subsection (b) does not limit appeals to those testing the "validity" of a commission order. As a result, the legislature obviously intended "to test the validity" to be a limitation on subsection (a)'s scope. To conclude otherwise would read the phrase out of the statute, something we are not at liberty to do in our effort to construe a statute. *See Mathewson v. State*, 2019 WY 36, ¶ 74, 438 P.3d 189, 214 (Wyo. 2019) (declining defendant's construction of statute which would require omitting a word from the statute). *See also, Triangle Cross Ranch, Inc. v. State*, 2015 WY 47, ¶ 18, 345 P.3d 890, 894 (Wyo. 2015) ("'[A] court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes[.]'") (quoting *In re Adoption of Voss*, 550 P.2d 481, 484 (Wyo. 1976)).

11

[¶36]  The Conservation Act does not define the phrase "to test the validity of" so we turn to its ordinary meaning.  The relevant term is "validity."  Under its current definition, "validity" means either "the quality or state of being valid: such as . . . the state of being acceptable according to the law," or "the quality of being well-grounded, sound, or correct."  *See* https://www.merriam-webster.com/dictionary/validity.  Black's Law Dictionary does not currently define "validity" but defines "valid" as either "[l]egally sufficient; binding <a valid contract>" or "[m]eritorious <that is a valid conclusion based on the facts presented in this case>."  Black's Law Dictionary, 1864 (11th ed. 2019).  The term is ambiguous.  *See Delcon Partners LLC*, ¶ 11, 450 P.3d at 685 ("[A] statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.") (quoting *In re Frank*, 2019 WY 4, ¶ 8, 432 P.3d 885, 887 (Wyo. 2019)).  *See also Life Techs. Corp. v. Promega Corp.*, --- U.S. ---, 137 S.Ct. 734, 739-40, 197 L.Ed.2d 33 (2017) (concluding the term "substantial" was ambiguous because its plain meaning "may refer either to qualitative importance or to quantitatively large size").  Turning to our rules of statutory construction, we conclude for several reasons that the legislature intended the word "validity" in § 30-5-113(a) to refer to legal sufficiency.  *In re Frank*, ¶ 8, 432 P.3d at 887 ("If we determine the language of a statute is ambiguous, we apply general principles of statutory construction to construe any ambiguous language to accurately reflect the intent of the legislature.") (quotations omitted).

[¶37]  First, § 30-5-113(a) was part of the original Conservation Act enacted in 1951.  At that time, Black's Law Dictionary defined "validity" as "*[l]egal sufficiency*, in contradistinction to mere regularity."  Black's Law Dictionary, 1797 (3d ed. 1944); Black's Law Dictionary, 1719 (4th ed. 1951).  *See also*, Webster's New Int'l Dictionary of the English Language, 2263 (1925) (defining "validity" in the law context as "[l]egal strength, force or authority; that quality of a thing which renders it supportable in law or equity; legal sufficiency; as *validity* of a will, contract or title").  *Cf. Phoenix Vintners, LLC v. Noble*, 2018 WY 87, ¶ 15 n.1, 423 P.3d 309, 314 n.1 (Wyo. 2018) (stating we can look to legislative history when a statute is ambiguous) (citations omitted).

[¶38]  Second, the context in which the term "validity" appears in § 30-5-113(a) points to it meaning "legal sufficiency."  *Life Techs. Corp.*, 137 S.Ct. at 740.  *See also*, *PacifiCorp, Inc. v. Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017) ("'We . . . construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection.'") (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).  Subsection (a) refers to the validity of any "provision of [the Conservation Act] or a rule, regulation or order."  The statutory canon *noscitur a sociis* teaches us "a word is known by the company it keeps." *McDonnell v. United States*, --- U.S. ---, 136 S.Ct. 2355, 2368, 195 L.Ed.2d 639 (2016); *Matter of Birkholz*, 2019 WY 19, ¶ 15, 434 P.3d 1102, 1106 (Wyo. 2019).  *See also, Life Techs. Corp.*, 137 S.Ct. at 740 ("[A] word is given more precise content by the neighboring words with which it is associated.") (quoting *United States v. Williams*, 553 U.S. 285, 294,

128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)). "While not an inescapable rule, this canon is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to [a statute]." *McDonnell*, 136 S. Ct. at 2368 (quotations omitted). Applying the rule to § 30-5-113(a), we construe the term "validity" in reference to the terms "[statutory] provision," "rule," "regulation" and "order." *Matter of Birkholz*, ¶ 15, 434 P.3d at 1106. When we speak to the "validity" of a statute, rule or regulation, we generally speak to its legal sufficiency, i.e., whether it is constitutional and within the scope of the rule-maker's authority. *See Nicodemus,* ¶ 29, 392 P.3d at 415 ("Courts have a duty to uphold the constitutionality of statutes if at all possible, but it is equally imperative that we declare legislative enactments invalid when they transgress the Wyoming Constitution.") (quoting *Kordus v. Montes*, 2014 WY 146, ¶ 6, 337 P.3d 1138, 1139-40 (Wyo. 2014)); *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 60, 120 P.3d 1031, 1048 (Wyo. 2005) ("[A]dministrative agencies are bound to comply with their enabling statutes"; "[a]n administrative rule or regulation which is not expressly or impliedly authorized by statute is without force or effect if it adds to, changes, modifies, or conflicts with an existing statute.") (citations omitted); *Disciplinary Matter of Billings*, 2001 WY 81, ¶¶ 25-27, 30 P.3d 557, 569 (Wyo. 2001) (concluding rules promulgated by Wyoming State Board of Outfitters and Professional Guides were invalid because they went beyond the authority granted to the Board by statute); *US West Commc'ns, Inc. v. Wyo. Pub. Serv. Comm'n*, 992 P.2d 1092, 1094 (Wyo. 1999) ("Rules promulgated in excess of an agency's statutory authority are null and void.") (citation omitted).

[¶39] Third, as stated above, § 30-5-113(b)'s scope is not limited to appeals "testing the validity" of a commission rule, regulation or order. Moreover, it allows appeals not only from the commission's rules, regulations and orders but also from its "decision[s]." We generally review an agency's final decision to determine whether it is "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law"; "[c]ontrary to constitutional right, power, privilege or immunity"; "[i]n excess of statutory jurisdiction, authority or limitations or lacking statutory right"; [w]ithout observance of procedure required by law"; or "[u]nsupported by substantial evidence." Section 16-3-114 (a), (c)(ii). In other words, we review it to determine not only whether it is legally sufficient but also whether it is correct. As such, we read § 30-5-113(b) to provide for judicial review of an agency action consistent with WAPA. That being said, the more limited scope of § 30-5-113(a) and the absence of the word "decision" therein demonstrates "validity" in § 30-5-113(a) is limited to "legal sufficiency."

[¶40] Because § 30-5-113(a) is limited to actions testing the legal sufficiency of a commission's rules, regulations, or orders, we conclude a civil action under § 30-5-113(a) is equivalent to a declaratory judgment action which may be brought to test certain administrative matters. A declaratory judgment action is available in administrative matters to challenge "the validity and construction of agency regulations, or . . . the constitutionality or interpretation of a statute upon which the administrative action is[] or is to be based . . . ." *Rocky Mountain*, 645 P.2d at 1168. We have found a declaratory

13

judgment action to be available if the party is seeking a determination regarding the constitutionality of an agency action, the authority of the agency to have acted, or an agency's interpretation of a statute. *See, e.g., Dir. of Office of State Lands & Invs. v. Merbanco, Inc.*, 2003 WY 73, ¶ 10, 70 P.3d 241, 247 (Wyo. 2003) (constitutionality of agency action); *Campbell Cty. Sch. Dist. v. Catchpole*, 6 P.3d 1275, 1283-4 (Wyo. 2000) (interpretation of agency's governing statutes); *State v. Kraus*, 706 P.2d 1130, 1133 (Wyo. 1985) (challenge to an agency's interpretation of a statute upon which the agency's action was based); *Rocky Mountain*, 645 P.2d at 1168 (jurisdiction and extent of the powers of two agencies); *Wyo. Dep't of Revenue v. Exxon Mobile Corp.*, 2007 WY 21, ¶ 17, 150 P.3d 1216, 1222-23 (Wyo. 2007) (challenge to Department's authority to retroactively select a valuation methodology contrary to statutory requirements). However, "[w]here the action would result in a prejudging of issues that should be decided in the first instance by an administrative body" or "where the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created," an action for declaratory judgment "should not be entertained." *Rocky Mountain*, 645 P.2d at 1168.

[¶41] Keeping in mind the different remedies offered by § 30-5-113(a) (akin to a declaratory judgment action) and § 30-5-113(b) (akin to a petition for review of agency action), we turn to BDED's complaint. It claimed the Commission's forfeiture of the blanket bond was "invalid" because it was done without an accounting, was based on an MIT test that BDED could not oversee due to the Commission prohibiting "Black Diamond" from entering the property, done without giving BDED an opportunity to plug and abandon the Castle Creek Well at its own cost, and based on the conclusion that BDED and BDI are alter egos of one another and BDED's bonds may be used to satisfy BDI's plugging and abandonment obligations. It sought an accounting of the WOSLI bonds and an order allowing BDED to plug and abandon the Castle Creek Well at its own cost and requiring the Commission to release all bonds held in BDED's name. In other words, it asked the district court to substitute its judgment for that of the Commission as to whether forfeiture was warranted. That request is outside the scope of a declaratory judgment action and outside the scope of § 30-5-113(a). *Rocky Mountain*, 645 P.2d at 1168.

[¶42]   BDED's only recourse was to timely file a petition for review with the district court within 30 days of the Commission's order. *See Sheridan Ret. Partners v. City of Sheridan*, 950 P.2d 554, 557 (Wyo. 1997) (concluding plaintiff could not avoid the filing requirements for a petition for review by filing a declaratory judgment action because the relief it sought was not proper). Because it did not timely file such petition, the district court was without jurisdiction. *Douglass v. Wyo. Dep't of Transp.*, 2008 WY 77, ¶ 11, 187 P.3d 850, 853 (Wyo. 2008) ("The filing of a timely, properly authorized, petition for review of administrative action is mandatory and jurisdictional.") (citing *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 62, ¶ 7, 155 P.3d 1041, 1043 (Wyo. 2007)). Dismissal of the complaint in Case No. 2017-0074 for want of jurisdiction was proper.

[¶43]   We emphasize that nothing in this opinion dispenses with the requirements of WRAP 12.  Review of most agency action will be via a petition for review filed within 30 days of the administrative order.  WRAP 12.04(a).  Only in limited circumstances do we allow a declaratory judgment action concerning administrative action.  Case. No. 2017-0074 does not fit those circumstances.

### 2. Did BDED bring its Claims Act complaint in Case No. 2018-0011 in the proper venue?

[¶44]   The district court decided it was without jurisdiction over BDED's Claims Act complaint (Case No. 2018-0011) because WAPA repealed § 30-5-113.  The parties agree the basis for the dismissal was wrong and so do we.  The district court failed to recognize Case No. 2018-0011 was brought pursuant to the Claims Act, not § 30-5-113.[1]  The parties disagree, however, on the appropriate relief.  BDED claims we should reverse and remand to the district court to allow it to consider the parties' arguments and apply the relevant analysis.  The Commission and WOSLI, on the other hand, contend the record supports dismissal because BDED brought its complaint in Johnson County, which is the wrong venue.

[¶45]   The district court did not dismiss the complaint based on improper venue.  However, we are free to "affirm a district court's ruling on any basis appearing in the record . . . ." *Maverick Benefit Advisors, LLC v. Bostrom*, 2016 WY 96, ¶ 13, 382 P.3d 753, 757 (Wyo. 2016) (citations omitted).  Section 1-39-117(b) of the Claims Act provides:

> (b) Venue for any claim against the state or its public employees pursuant to this act shall be in the county in which the public employee resides or the cause of action arose or in Laramie County.  Venue for all other claims pursuant to this act shall be in the county in which the defendant resides or in which the principal office of the governmental entity is located.

[¶46]   The Commission and WOSLI qualify as "the state" in § 1-39-117(b).  *See* § 1-39-103(vi) ("'State' or 'state agency' means the state of Wyoming or any of its branches, agencies, departments, boards, instrumentalities or institutions.").  As a result, BDED's Claims Act complaint against them was required to be brought in the county "in which the public employee resides," "the cause of action arose" or "in Laramie County."  BDED did

---

[1] BDED emphatically asserted its second lawsuit was brought pursuant to the Claims Act and venue in Johnson County was proper based on the Act.  We note that this suit included a claim for declaratory relief asserting an unconstitutional taking, which may not be subject to the Claims Act.  BDED did not assert below or here that venue was proper under the Wyoming Declaratory Judgments Act, and we do not address that matter.

not sue a public employee nor did it file suit in Laramie County. Venue in Johnson County was proper only if it is the county "where the cause of action arose." It was not.

[¶47] We have scant case law addressing the meaning of "where the cause of action arose" in the context of a venue statute. In *Spear v. Nicholson*, 882 P.2d 1237, 1242 (Wyo. 1994), we concluded the plaintiffs' claims for undue influence with respect to their father's transfer of property from his trust were properly filed in Natrona County because some of the documents transferring the property were signed in Casper and therefore the "cause of action arose there." In *Bourke v. Grey Wolfe Drilling Co.*, 2013 WY 93, ¶¶ 5-6, 22, 305 P.3d 1164, 1166, 1169 (Wyo. 2013), we concluded Mr. Bourke's fraud and wrongful termination claims against his former employer "arose" in Lincoln County, where he was injured while working on a drilling rig operated by his employer. *Id.*, ¶¶ 5-6, 22, 305 P.3d at 1166, 1169. We need not definitively decide in this case where the "cause of action arose." It suffices to say it was not Johnson County.

[¶48] The leases, which led to the posting of the blanket bond and WOSLI bonds and which BDED alleges were breached, were located in Lincoln County. The Castle Creek Well, which BDED was allegedly denied access to and where the faulty MIT test was conducted which led to the Commission's decision to foreclose on the blanket bond, was located in Lincoln County. The blanket bond was posted with the Commission, which is located in Natrona County. The WOSLI bonds were posted with WOSLI, which is located in Laramie County. The bonds were held at First Interstate Bank. While the complaint does not allege which branch of First Interstate Bank held the bonds, BDED's counsel at oral argument believed it was the Natrona County branch. The bank remitted the bonds to the Commission, which is located in Natrona County. The blanket bond was foreclosed by the Commission after a hearing conducted in Natrona County. It appears the hearing at which the Commission decided to forfeit the WOSLI bonds would have also been held in Natrona County and the record does not indicate otherwise.

[¶49] BDED nevertheless argues that venue was appropriate in Johnson County because a cause of action does not arise until all elements, including damages, are present, relying on *McCreary v. West*, 971 P.2d 974, 979 (Wyo. 1999). As a result, BDED argues "numerous other courts have found that venue is proper where the plaintiff is located because that is where all elements of the cause of action were first present." It claims Johnson County is where it is located and where it suffered its damages.

[¶50] *McCreary* is inapposite. It concerned when a cause of action "accrues" for purposes of starting the statute of limitations, not where "the cause of action" arose for purposes of venue. *Id.* The cases BDED cites for the proposition that venue is proper where the plaintiff resides because damages are felt there are not binding and involved specific venue statutes. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 505 (9th Cir. 2000) (refusing to limit venue in a Title VII failure to promote case to the place where the decision not to promote occurred because "[i]n general, the effect of Title VII's venue

16

provision is to allow suit in the judicial district in which the plaintiff worked or would have worked"); *Frontier Fed. Sav. & Loan Ass'n v. Nat'l Hotel Corp.*, 675 F.Supp. 1293, 1300 (D. Utah 1987) (interpreting former version of federal venue statute, 28 U.S.C. § 1391, and recognizing three different tests used for determining "where a claim arose"); *Cal. State Parks Found. v. Superior Court*, 150 Cal.App.4th 826, 833, 844-45 (Cal.Ct.App. 4th Dist. 2007) (interpreting venue provision relating to actions against public officers; statute's reference to "the county in which the cause, or some part of the cause, arose" means where the injury occurred, not where the agency decision was made).

[¶51]  Moreover, had the legislature wanted venue to be in the county where the plaintiff resides or has its principal place of business, it could have said so as it has in other venue statutes. *See, e.g.,* Wyo. Stat. Ann. § 1-5-105 ("An action, other than those mentioned in W.S. 1-5-101 through 1-5-103, against a corporation created under the laws of this state may be brought in the county in which the corporation is situate or has its principal office or place of business."); § 1-5-107 ("An action, other than one (1) of those mentioned in W.S. 1-5-101 through 1-5-104, against a nonresident of this state or a foreign corporation, whether or not codefendants reside in Wyoming, may be brought in any county where the cause of action arose or where the plaintiff resides."); § 16-3-114(a) (judicial review of agency action may be brought "if no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business"); § 30-2-213(a) (allowing a person aggrieved by a mining inspector's decisions to seek judicial review "in the district court for the county in which the property affected is located, or if no real property is involved, in which the person aggrieved or adversely affected in fact resides or has its principal place of business").  It did not do so for the Claims Act.

[¶52]  BDED also maintains venue is based on fairness and convenience to the parties.  It argues those principles dictate Johnson County as the proper venue in this case because its principal place of business and one of its primary witnesses are located there and, if remanded, its complaint in Case No. 2017-0074 will proceed in Johnson County and it plans to consolidate the complaints.  We are not remanding Case No. 2017-0074.  Moreover, "the legislature, when it adopted Wyoming's various venue statutes, made its choice of the 'geographical location[s] in which, for the sake of fairness, convenience, or other commanding policy considerations, a cause is to be tried.'" *Saunders*, ¶ 19, 445 P.3d at 997 (quoting *Bourke*, ¶ 21, 305 P.3d at 1169).  For the Claims Act, the legislature chose the county "in which the public employee resides or the cause of action arose" or "Laramie county."

[¶53]  Because venue was not proper in Johnson County, dismissal of BDED's Claims Act complaint in Case No. 2018-0011 was appropriate.  *Bourke*, ¶ 31, 305 P.3d at 1171 (dismissal of complaint for improper venue was appropriate because "Wyoming does not have a statute authorizing transfer of cases which have been filed in an improper venue").  However, we remand for the district court to clarify the dismissal is without prejudice.  *See*

17

*Aron v. Willey*, 2019 WY 122, ¶ 16 n.8, 453 P.3d 1031, 1035 n.8 (Wyo. 2019) ("A dismissal for improper venue is not an adjudication on the merits and should be without prejudice.") (quoting *Bourke*, ¶ 35, 305 P.3d at 1172).

## CONCLUSION

[¶54]   We affirm the district court's dismissal of BDED's complaint in Case No. 2017-0074 because the complaint was outside the scope of § 30-5-113(a) and, as a result, BDED's failure to timely file a petition for review deprived the district court of jurisdiction. We also affirm the district court's dismissal of BDED's complaint in Case No. 2018-0011 because it was brought in the wrong venue, but we remand with instructions for the district court to clarify the dismissal is without prejudice.